BENTLEY v ASSOCIATED SPRING COMPANY

Docket No. 67567. Submitted April 8, 1983, at Detroit.—Decided March 20, 1984. Leave to appeal applied for.

Ruth Bentley, a machine tester for Associated Spring Company, injured her finger around May 1, 1974. She was off work for a month, and Associated Spring paid workers' compensation benefits for the injury. Bentley returned to work and worked steadily on the night shift until being laid off in January, 1976. While laid off, Bentley entered a hospital, suffering a nervous breakdown. Two weeks later, she was released after a final diagnosis of "involutional paranoid psychosis", a mental condition occurring during a change of life and characterized by a partial psychotic state. Bentley was called back to work in April, 1976, but quit in early August. She informed Associated Spring that she was quitting for personal reasons. She has since claimed that she quit because of her nervous condition. Bentley petitioned for workers' compensation benefits for her psychiatric problems. The hearing referee refused to admit the deposition of Bentley's doctor because the rules of procedure required that the depositions be taken three weeks prior to the hearing date. The deposition of Bentley's doctor had been taken five days prior to the hearing. The referee subsequently ruled that Bentley had failed to sustain her burden of proving a disabling personal injury arising out of and in the course of her employment. She appealed to the Workers' Compensation Appeal Board, which reversed, finding that the deposition was admissible and that Bentley had sustained her burden of showing a work-related psychiatric disability. Associated Spring and Travelers Insurance Company filed a timely application for leave to appeal to the Court of Appeals. Leave was denied. Associated Spring and Travelers then filed an application for leave to appeal to the Supreme Court. That Court, in lieu of granting leave to appeal, remanded the case back to the Court

REFERENCES FOR POINTS IN HEADNOTES

[1] 81 Am Jur 2d, Workmen's Compensation § 229.
   82 Am Jur 2d, Workmen's Compensation § 448.
[2] 82 Am Jur 2d, Workmen's Compensation §§ 477, 523, 633.

of Appeals for consideration as on leave granted, 414 Mich 938 (1982). *Held:*

1. The appeal board erred in finding that Associated Spring had sufficient notice of Bentley's psychiatric problems from notice of her earlier hand injury. Associated Spring had no indication that the finger injury would develop into severe psychiatric problems nearly two years later.

2. The appeal board erred in reversing the hearing referee's exercise of discretion in mandating that depositions must be taken at least three weeks prior to the hearing. The referee's rule was within the scope of his discretion and quelled plaintiff's attempt to gain an unfair advantage over defense efforts.

3. Defendants' argument that the "honest perception" standard formulated by the Supreme Court in an earlier case should be changed is well taken. The purely subjective standard unduly emphasizes the testimony of a lay person with an admitted psychiatric disorder over expert testimony about the actual cause of the disorder. The Legislature amended the workers' compensation law to create a statutorily defined causation standard for mental disabilities. The Court of Appeals suggests that the Supreme Court reconsider its position and judicially adopt the statutory standard for cases arising before the effective date of the statutory amendment.

The decision of the appeal board is reversed and the hearing referee's decision denying benefits is reinstated.

1. WORKERS' COMPENSATION — NOTICE OF INJURY — SUBSEQUENT INJURIES.

   Notice of an employee's finger injury in 1974 was not sufficient under the Worker's Disability Compensation Act to inform her employer of the employee's psychiatric problems in 1976 although the employee claimed that her psychiatric problems resulted from her finger injury and subsequent working conditions; the employee suffered separate injuries to different parts of her body and the employer had no indication that the finger injury would develop into severe psychiatric problems nearly two years later (MCL 418.381; MSA 17.237[381]).

2. WORKERS' COMPENSATION — RULES OF PROCEDURE — APPEAL BOARD.

   The Workers' Compensation Appeal Board erred in reversing a hearing referee's ruling that a deposition could not be admitted in evidence because it had not been taken in compliance with a procedural rule set forth by the referee where the rule was

within the referee's scope of discretion and quelled the plaintiff's attempt to gain an unfair advantage over defense efforts.

*Robert F. Ponte,* for plaintiff.

*Lacey & Jones* (by *Phillip G. Rosenberg),* for defendant.

Before: WAHLS, P.J., and GRIBBS and M. WARSHAWSKY,* JJ.

GRIBBS, J. The defendants, Associated Spring Company and Travelers Insurance Company, appeal from a determination of the Workers' Compensation Appeal Board (WCAB) granting the plaintiff, Ruth Bentley, an open award of compensation benefits of $115 per week and necessary psychiatric care expenses. The WCAB reversed the decision of the hearing referee, who had denied benefits.

Bentley began working for Associated Spring Company on October 30, 1973, as a machine tester. Her job was to ensure that springs automatically fed into a machine did not clog or jam it. Around May 1, 1974, she was injured when her finger was caught in a machine. She was unable to work for a month, and Associated paid workers' compensation benefits for the injury. She then worked full workweeks on the night shift until being laid off in January, 1976. Bentley testified that she did not like working the night shift because she was frequently left working alone and she was frightened of being injured again and that no one would be around to help her.[1]

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] When Bentley's finger was caught in the machine, she screamed for help. Co-workers could not hear her screams over the sound of the machines in the shop. She was assisted only after a co-worker looked at Bentley and saw the expression on her face.

While laid off, Bentley entered a hospital, suffering a nervous breakdown. She entered in February, 1976, and was released two weeks later after a final diagnosis of "involutional paranoid psychosis", a mental condition occurring during a change of life and characterized by a partial psychotic state. Bentley was called back to work in April, 1976, but quit in early August because, as she testified, "I felt my nerves were going bad all over again, and I felt that I should quit my job to keep —I couldn't keep stable anymore and I felt myself slipping back again." She informed her employer, however, that she was quitting for "personal reasons".

On March 24, 1977, Bentley petitioned for benefits for her psychiatric problems. The hearing referee denied benefits, and the WCAB reversed. Defendants filed a timely application for leave to appeal to the Court of Appeals. Leave was denied. They then filed an application for leave to appeal to the Supreme Court. The Supreme Court, in lieu of granting leave to appeal, remanded to the Court of Appeals for consideration as on leave granted. 414 Mich 938 (1982). We reverse the WCAB decision.

## I. TIMELY NOTICE

In allowing Bentley's claim, the WCAB determined that Associated had sufficient notice of Bentley's 1976 psychiatric problems from notice of her 1974 hand injury. MCL 418.381; MSA 17.237(381). We disagree.

The Supreme Court in *Palchak v Murray Corp of America,* 318 Mich 482; 28 NW2d 295 (1947), allowed notice to "carry over" when an injury became more serious. *Palchak* involved an initial blow to the eye, with compensable injuries, which

finally resulted in another compensable injury, the formation of cysts. It is in this manner that *Palchak* is distinguishable: had Bentley suffered additional damages to her finger *(e.g.,* failure to properly heal), the *Palchak* holding would allow the initial notice in 1974 to cover her problems in 1976. But instead, Bentley suffered from separate injuries to different parts of the body. See *Palchak,* 318 Mich 492-493. Notice of her finger injury was not sufficient to inform Associated of her psychiatric problems. Associated had no indication that a finger injury would develop into severe psychiatric problems nearly two years later.[2]

## II. Deposition Testimony

The hearing referee excluded Bentley's medical witness's deposition because it was taken five days before the scheduled date of the hearing. The referee's procedural rules required at least three weeks between depositions and the hearing. This rule was based on Rule 10(c),[3] which provides that "the trial completion time shall be at the discretion of the Hearing Referee". The defendants argue that this means a referee can set reasonable pretrial procedures. Alternatively, the defendants argue that they were denied due process, Const 1963, art 1, § 17, because they were unable to consult with their expert witness and depose him in response to plaintiff's expert's deposition as their expert was on vacation until the day before trial. There is merit in both arguments.

---

[2] The plaintiff argues an independent basis for notice, *i.e.,* her absence while in the psychiatric hospital and a doctor's letter to the company saying she was fit to return to work. The WCAB did not consider this possibility, and we are not persuaded by it.

[3] 1979 AC, R 408.40c. A new rule, 10f(a), now expressly covers the specific problem in this case by designating time limits for taking depositions. 1979 AC, R 408.40f(a)..

We must liberally construe administrative rules in light of their purpose. *Turner v General Motors Corp,* 70 Mich App 532, 543-544; 246 NW2d 631 (1976), *aff'd* 401 Mich 419; 258 NW2d 414 (1977). The clear intent behind Rule 10(c) was to provide hearing referees with the necessary power to expeditiously conduct hearings. This necessarily includes the power to establish reasonable rules for pretrial preparation. If the referee were powerless to prescribe deposition time rules, parties would depose witnesses until soon before trial. Trial would have to be delayed because—as here—the opposing party would need time to prepare and respond. If trial proceeds without opportunity to prepare a defense to new deposition evidence, due process rights will certainly be violated. The referee's rule here was within the scope of his discretion under Rule 10(c) and quelled the plaintiff's attempt to gain an unfair advantage over defense efforts. The WCAB erred when it reversed the hearing referee's exercise of discretion.

### III. THE "HONEST PERCEPTION" STANDARD

The defendants finally argue for a change in the "honest perception" standard of *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1, 26; 268 NW2d 1 (1978). The defendants frankly recognize that this Court is powerless to overturn *Deziel,* but raise the issue to preserve it for further review. We join the defendants' criticism of that holding. The purely subjective standard unduly emphasizes the testimony of a lay person with an admitted psychiatric disorder over expert testimony about the actual cause of the disorder. As long as the claimant *perceives* that his disorder arises from his job, he is entitled to compensation. In view of the financial gain—sometimes very

substantial—any person who files a claim based on a psychiatric disorder will have strong motives to lie about his perception. See Justice COLEMAN's dissent in *Deziel, supra,* p 60. The question then becomes whether that perception is "honest". The defendants argue that, under this loose standard for recovery, Michigan employers are nearly becoming general health insurers for psychiatric disabilities. This is an alarming possibility.

The Legislature showed its displeasure with the *Deziel* opinion by amending the workers' compensation law to create a statutorily defined causation standard for mental disabilities. In part, the amendment states that "[m]ental disabilities shall be compensable when arising out of actual events of employment, not unfounded perceptions thereof". MCL 418.301(2), 418.401(c); MSA 17.237(301)(2), 17.237(401)(c). See Joseph, *Causation in Workers' Compensation Mental Disability Cases; The Michigan Experience,* 27 Wayne L Rev 1079, 1083 (1981). The amendment took effect on January 1, 1982—and thus our case arises under the pre-amendment *Deziel* standard. In light of the Legislature's action and the criticism of *Deziel,* we suggest that the Supreme Court reconsider its position and judicially adopt the statutory standard for cases arising before the statutory amendment.

## CONCLUSION

Because the plaintiff did not sufficiently notify Associated of her psychiatric injuries, she is barred from filing for workers' compensation benefits. Additionally, the WCAB erred when it overrode the hearing referee's time requirement for deposing medical experts, which was well within the rules established by the Bureau of Workers' Dis-

ability Compensation. The hearing referee's rule was a proper exercise of discretion and, consistent with the desire to expedite hearings, preserved the defendants' right to due process. The decision of the WCAB is therefore reversed and the hearing referee's decision denying benefits reinstated.