*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TOWNSHIP OF HOPKINS and TOWNSHIP OF
WAYLAND,

        Plaintiffs-Appellants,

v

STATE BOUNDARY COMMISSION,

        Defendant-Appellee.

FOR PUBLICATION
February 24, 2022
9:15 a.m.

No. 355195
Court of Claims
LC No. 20-000130-MZ

Before: SWARTZLE, P.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM.

Plaintiffs, Township of Hopkins and Township of Wayland, appeal as of right the Court of Claims' order granting summary disposition under MCR 2.116(C)(10) in favor of defendant, the State Boundary Commission (the Commission). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. THE COMMISSION

Before 1968, various provisions of the Home Rule Cities Act (HRCA), MCL 117.1 *et seq*., governed the incorporation, consolidation or alteration of city boundaries. In 1968, the Legislature enacted the State Boundary Commission Act (SBCA) which created the Commission with authority to govern the incorporation and consolidation of cities and villages. In 1970, the Legislature amended the HRCA to grant the Commission authority over annexation procedures under the HRCA. Two years later, the Legislature amended the SBCA by adding MCL 123.1011a, expressly establishing the Commission's jurisdiction over annexation petitions and resolutions.

The Commission is comprised of three "state members" appointed by the governor to serve three-year terms, MCL 123.1002, and two "county members" appointed by the presiding probate judge of a county to serve on the Commission when it considers boundary adjustments for territory within that county. MCL 123.1005. MCL 123.1004 authorizes the state members to promulgate rules and regulations and prescribe procedures for carrying out the purposes of the SBCA in relevant part as follows:

> The state members shall make rules and regulations and prescribe procedures necessary or desirable in carrying out the intent and purpose of this act, including forms of petitions for municipal boundary adjustments, and the documents, maps and supporting statements deemed to be necessary, establish rules for public hearings, for the submission of supplementary documents and statements, and governing the holding of elections where necessary.

MCL 123.1004 further provides that the rules and regulations must be promulgated in accordance with the provisions of the Administrative Procedures Act of 1969, MCL 24.201 *et seq.* (APA).[1]

The Commission promulgated rules and regulations under the SBCA, but in February 2017 it issued a notice for a public hearing on the rescission of those rules because it felt that they went beyond the scope of the SBCA. The Commission rescinded the rules in May 2018 and it has not promulgated rules to replace the rescinded rules but has posted on the Internet informational guidelines[2] describing the Commission's annexation process which includes holding three meetings. To start, the three state members conduct a "legal sufficiency meeting" in Lansing to review petitions to determine the appropriateness of annexation. If the state members determine the petition legally sufficient, the Commission schedules a public hearing to be held in the locale of the proposed annexation for public comment from the affected city, village and/or township. Following the public hearing, the full Commission meets in Lansing to deliberate and recommend a decision on the petition. The Commission staff contact the appropriate clerks to determine the location and three potential dates for the public hearing before the legal sufficiency meeting, clerks confirm the final arrangements for the public hearing within five days after the legal sufficiency meeting, comments made at the public hearing are provided to the clerks or their legal representatives, and parties or their representatives may submit one written rebuttal within 10 days of receipt of the comments. The guidelines also include a link to a more detailed description of the process.[3] Among other things, this document states that, after the Commission issues its final order, a party may seek judicial review through the circuit court.

## B. PLAINTIFFS' DISPUTE

In January 2020, a group of property owners in Allegan County (the petitioners) signed a petition seeking the annexation of 467.45 acres of land from plaintiffs to the city of Wayland.

---

[1] MCL 123.1004 states that the rules must be promulgated in accordance with 1943 PA 88 and 1952 PA 197, both of which have been repealed and replaced by various provisions of the APA. MCL 24.311; MCL 24.312.

[2] The informational guidelines are available on the Department of Licensing and Regulatory Affairs' (LARA) website at https://www.michigan.gov/lara/0,4601,7-154-89334_10575_17394_17565-174311--,00.html (accessed February 4, 2022).

[3] Department of Licensing and Regulatory Affairs' (LARA), *Annexation Procedure* at https://www.michigan.gov/documents/lara/LARA_Annexation_Procedure_695952_7.pdf (accessed February 4, 2022).

Plaintiffs received notice of the petition by letter dated January 14, 2020. The letter notified plaintiffs that the petition would be reviewed for legal sufficiency at a Commission meeting scheduled for April 29, 2020, directed plaintiffs and the city to complete questionnaires downloaded from the Commission's Internet site, and instructed them that a description of the petition process could also be obtained from that website.

On May 20, 2020, plaintiffs e-mailed the Commission indicating that they were available for a public hearing at the Hopkins Elementary School gymnasium on August 18, 19, or 20, 2020. The following day, plaintiffs received a response stating that the venue and possible hearing dates would be presented to the commissioners at the legal sufficiency meeting and, "[i]f the petition is found sufficient, it will then be up to the commissioners to decide where and when the public hearing will take place based upon what options each municipality provided." At a virtual meeting convened on June 4, 2020, the Commission reviewed the petition to determine its legal sufficiency

under MCL 123.1008[4] and unanimously found the petition legally sufficient. MCL 123.1009 specifies the criteria the Commission must consider when reviewing proposed boundary changes.[5]

---

[4] MCL 123.1008 provides:

      (1) The commission shall review proposed incorporations considering the criteria established by section 9.

      (2) If the commission finds that a petition does not conform to this act, to Act No. 278 of the Public Acts of 1909, as amended, or Act No. 279 of the Public Acts of 1909, as amended, to the extent that the requirements are not superseded by this act, or to the rules of the commission, it shall certify the nonconformance, stating the reasons for the nonconformance, and return the petition to the person from whom it was received with the certificate.

      (3) At least 60 days but not more than 220 days after the filing with the commission of a sufficient petition proposing incorporation, the commission shall hold a public hearing at a convenient place in the area proposed to be incorporated. At the public hearing the reasonableness of the proposed incorporation based on the criteria established in this act shall be considered. If section 6 prohibits the commission's acting on a petition because 1 or more petitions or resolutions have priority the time period provided in this section shall commence on the date upon which the prohibition ceases.

      (4) The commission shall give notice of the hearing in the manner required by section 4a(1) and by publication in a newspaper of general circulation in the area at least 7 days before the date of the hearing, and by certified mail to the clerks of municipalities and townships affected, at least 30 days before the date of the hearing. After the commission has entered its order for a public hearing on an incorporation proposal, neither the sufficiency nor legality of the petition shall be questioned in a proceeding.

[5] MCL 123.1009 provides:

Criteria to be considered by the commission in arriving at a determination shall be:

      (a) Population; population density; land area and land uses; assessed valuation; topography, natural boundaries and drainage basins; the past and probable future urban growth, including population increase and business, commercial and industrial development in the area. Comparative data for the incorporating municipality, and the remaining portion of the unit from which the area will be detached shall be considered.

      (b) Need for organized community services; the present cost and adequacy of governmental services in the area to be incorporated; the probable future needs for services; the practicability of supplying such services in the area to be

On July 10, 2020, plaintiffs filed a "Verified Complaint for Injunctive Relief" in the Court of Claims alleging that MCL 123.1004 required the Commission to promulgate rules and regulations and prescribe procedures, but that the Commission in 2018 had repealed all rules governing its operations and failed to promulgate new rules. Plaintiffs alleged that the Commission instead operated under guidelines that were not promulgated pursuant to the SBCA or the APA. Plaintiffs alleged that the Commission failed to inform them that it processed annexation petitions pursuant to guidelines that had not been promulgated pursuant to MCL 123.1004 and the APA. Plaintiffs asserted that they submitted timely written responses to the Commission's questionnaire, attended the remote meeting held on June 4, 2020, and intended to submit evidence that the petition lacked legal sufficiency because parcels located within Hopkins Township were not contiguous with the city of Wayland. Plaintiffs alleged that they were not given an opportunity to be heard before the Commission voted on the petition's legal sufficiency. Noting that a public hearing on the proposed annexation had been scheduled for August 19, 2020, plaintiffs alleged that, although MCL 123.1009 provided criteria for determining whether to approve an annexation petition, no rules regulated the procedure for a public hearing or the submission of documentary evidence at the hearing. Plaintiffs requested that the Court of Claims issue a preliminary and permanent injunction prohibiting the Commission from processing annexation Petition Number 20-AP-01 until it promulgated rules in accordance with the provisions of the Act and through the APA.

On August 17, 2020, plaintiffs' counsel e-mailed the Commission, inquiring whether a public hearing was scheduled for August 19, 2020. The Commission responded that "[a]t this time, no public hearing has been scheduled. The executive orders are still in effect. You will be notified when the public hearing is scheduled."

In lieu of answering the complaint, the Commission moved for summary disposition on the ground that *Midland Twp v Mich State Boundary Comm* (*Midland I*), 64 Mich App 700, 712; 236 NW2d 551 (1975), held that failure to promulgate rules did not prejudice plaintiffs. The Commission admitted that it rescinded its rules and regulations in 2018, but asserted that until it adopted new rules it operated under published, nonbinding guidelines, as well as the provisions of the SBCA. The Commission stated that its online guidelines provided a step-by-step overview of the statutorily governed annexation process and explained that the legal sufficiency proceeding determined whether the technical requirements of the SBCA were satisfied. The Commission

---

incorporated; the probable effect of the proposed incorporation and of alternative courses of action on the cost and adequacy of services in the area to be incorporated and on the remaining portion of the unit from which the area will be detached; the probable increase in taxes in the area to be incorporated in relation to the benefits expected to accrue from incorporation; and the financial ability of the incorporating municipality to maintain urban type services in the area.

    (c) The general effect upon the entire community of the proposed action; and the relationship of the proposed action to any established city, village, township, county or regional land use plan.

contended that plaintiffs failed to cooperate in scheduling a public hearing. The Commission argued that plaintiffs lacked standing under MCR 2.605(A)(1) because the grant of the annexation petition concerned a contingent future event that might never occur, the SBCA provides no statutory right of action, and plaintiffs failed to exhaust their administrative remedies. The Commission also argued that plaintiffs' complaint was premature because it had not yet issued a final determination regarding the annexation petition, and final decisions under the SBCA may only be reviewed in the circuit court. The Commission also contended that plaintiffs had no vested right or legally protected interest in their boundaries, citing *Midland Twp v Michigan State Boundary Commission* (*Midland II*), 401 Mich 641, 664; 259 NW2d 326 (1977).

The Commission also argued that plaintiffs were not entitled to injunctive relief because they had not suffered any prejudice, citing *Midland I*, 64 Mich App at 712, and *In re Turner*, 108 Mich App 583; 310 NW2d 802 (1981). Further, the Commission asserted that plaintiffs would not suffer any prejudice because they received notice of the proceedings and had the opportunity to participate. Noting that the complaint did not allege any present or future damages or particularized injury, or that defendant had acted in bad faith, the Commission contended that the balance of the equities favored its position.

On September 14, 2020, the Commission notified plaintiffs that a public hearing would be held on October 14, 2020, at the Wayland Union High School.[6] Plaintiffs responded to the Commission's motion for summary disposition the following day by arguing that the SBCA unequivocally required the Commission to promulgate rules and regulations necessary to process annexation petitions. Plaintiffs contended that they had "a valid legal argument that would have resulted in rejection of the annexation petition pursuant to MCL 123.1008 for lack of legal sufficiency" but were given no opportunity to be heard before the June 4 legal sufficiency determination "resulting in prejudice and irreparable harm against the Townships." Plaintiffs also argued that they suffered irreparable harm because of the failure to promulgate rules which caused confusion and allowed the Commission to proceed in violation of the SBCA. They asserted that they were subjected to "an arbitrary and capricious sham proceeding causing a waste of scarce public resources."

In their argument, plaintiffs noted that the Commission had initially promulgated rules in 1977, amended those rules in 2013, and repealed them in 2018. Plaintiffs contended that the plain and unambiguous language of the SBCA required the Commission to promulgate rules and regulations pursuant to the APA. They asserted that the Commission had not informed the parties that guidelines were published and available before the legal sufficiency meeting. Plaintiffs argued that the Commission's guidelines were not available to the parties before that meeting and no discussion occurred regarding the legal sufficiency of the petition. Plaintiffs contended that MCL 123.1012(2) required parcels considered for annexation to be contiguous to a city, MCL 123.1008 required the Commission to reject a petition that is not legally sufficient, plaintiffs were never given an opportunity be heard on this issue, and the Commission never discussed their objections

---

[6] A Notice of Public Hearing issued later by the Commission rescheduled the public hearing on the petition for annexation for November 10, 2021, at the Hopkins Elementary School gymnasium.

at the hearing. They argued that they were prejudiced by the failure to promulgate rules because no binding process governed the conduct of hearings or the presentation of evidence.

Respecting their request for injunctive relief, plaintiffs argued that the four factors stated in *State Employees Ass'n v Dep't of Mental Health*, 421 Mich 152; 365 NW2d 93 (1984), favored their request because they were likely to prevail on the merits of their claim, they would suffer irreparable injury if the court did not issue an injunction, the Commission would suffer little or no harm from issuance of an injunction, and an injunction would cause no harm to the public interest. Regarding standing, plaintiffs argued that an actual controversy existed because the Commission operated in violation of the SBCA by not functioning under promulgated rules, plaintiffs had a substantial interest in the Commission's compliance with the statutory requirements, and the Commission had not cited any binding legal authority precluding an aggrieved party from filing a claim for injunctive relief against an administrative agency. Plaintiffs contended further that their claim was ripe for judicial review because the controversy was not hypothetical since they suffered prejudice at the legal sufficiency meeting held without promulgated rules regulating the proceeding. Plaintiffs requested that the court deny the Commission's motion for summary disposition or, in the alternative, grant them summary disposition under MCR 2.116(I)(2).

In its reply, the Commission contended that plaintiffs had not been injured by the absence of promulgated rules because the Commission provided them with written notice of the proceedings, invited them to submit a questionnaire and attend the legal sufficiency meeting, and plaintiffs would have additional opportunities to participate before and during the public hearing. Citing *Midland II*, 401 Mich at 674, the Commission argued that annexation proceedings are not contested cases and that plaintiffs had no vested rights or legally protected interest in their boundaries; therefore, plaintiffs failed to establish any prejudice to a substantial right, as required under the APA. The Commission contended that the procedures described in its informational guidelines complied with the provisions of the SBCA, plaintiffs cited no caselaw supporting their request for an injunction, and litigants are required to exhaust their administrative remedies before seeking equitable relief from a court. The Commission argued that plaintiffs had no independent right to sue it in the Court of Claims, but had the right to judicial review in circuit court after a final administrative decision, pursuant to § 18 of the SBCA, MCL 123.1018.

On October 1, 2020, the Court of Claims issued an opinion and order granting the Commission's motion for summary disposition under MCR 2.116(C)(10).[7] Based on its review of the minutes of the June 4, 2020 legal sufficiency meeting, the court found that the Commission had reviewed and discussed the petition for annexation and that plaintiff's counsel "argued on plaintiff's behalf that the parcels at issue were not contiguous." Respecting the Commission's standing and ripeness arguments, the court explained that plaintiffs' complaint did not challenge an anticipated final decision on the annexation petition. The court found that plaintiffs had a substantial interest in litigating the Commission's failure to promulgate rules, were not required to

---

[7] The complaint and other documents filed in the Court of Claims name both Hopkins Township and Wayland Township as plaintiffs. However, the opinion and order granting summary disposition in favor of the Commission named only Hopkins Township as plaintiff and referred to "plaintiff" in the singular.

exhaust administrative remedies, and therefore had standing. Despite finding that plaintiffs had standing and that the matter was ripe for judicial review, the court, nevertheless, granted the Commission's motion for summary disposition on the ground that plaintiffs had failed to demonstrate any prejudice or harm resulting from the lack of rules. Citing *In re Turner* and *Midland I*, the court explained that plaintiffs were unable to show prejudice in light of the factual record in this case and the SBCA's "comprehensive statutory scheme." Noting that plaintiffs had been permitted to argue that parcels were not contiguous with the city of Wayland and that they had been invited to participate in the public hearing scheduled for October 14, 2020, the Court of Claims ruled that plaintiffs failed to demonstrate the existence of a genuine issue of material fact regarding prejudice.

The Court of Claims analyzed the text of MCL 123.1004 and explained that the statute required the Commission to promulgate only those rules that it considered necessary or desirable, and observed that plaintiffs had not argued that the court could require the Commission to decide whether it was necessary or desirable to promulgate rules. The court also noted that, although MCL 24.238 provided a mechanism for plaintiffs to request that the Commission promulgate rules, plaintiffs had not employed that mechanism and did not suggest any specific rules to be promulgated. The court concluded that "the availability of other forms of relief further undercut[] the viability of plaintiff's request for injunctive relief." The court, therefore, granted the Commission summary disposition. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a court's decision on a motion for summary disposition. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). "De novo review means that we review the legal issue independently, without required deference to the courts below." *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). The Court of Claims granted summary disposition pursuant to MCR 2.116(C)(10). A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). A genuine issue of material fact exists when the record reveals an issue upon which reasonable minds might differ. *Id.* On appeal, a reviewing court must consider the pleadings, admissions, and other evidence in the light most favorable to the nonmoving party. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). Whether the SBCA requires defendant to promulgate rules governing annexation proceedings is an issue of law. We review de novo both issues of law and issues regarding statutory interpretation. *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 406; 751 NW2d 443 (2008).

We review for an abuse of discretion a court's decision whether to grant injunctive relief. *Janet Travis, Inc v Preka Holdings, LLC*, 306 Mich App 266, 274; 856 NW2d 206 (2014). A court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. *In re Guardianship of Brosamer*, 328 Mich App 267, 275; 936 NW2d 870 (2019).

III. ANALYSIS

Plaintiffs contend that the Court of Claims erred by holding that MCL 123.1004 does not require the Commission to promulgate rules in order to process annexation petitions and also erred by ruling that plaintiffs were not prejudiced by the Commission's failure to promulgate such rules. We disagree.

A court's primary task when interpreting a statute is to " 'discern and give effect to the intent of the Legislature.' " *Ford Motor Co v Dep't of Treasury*, 496 Mich 382, 389; 852 NW2d 786 (2014), quoting *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). A court first examines the plain language of the statute, reading statutory provisions "in the context of the entire act, giving every word its plain and ordinary meaning." *Driver v Naini*, 490 Mich 239, 247; 802 NW2d 311 (2011). Statutory provisions may not be read in isolation, *Robinson v Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010), and courts must avoid a construction of the statute that renders any portion of it surplusage or nugatory, *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 361; 917 NW2d 603 (2018). When statutory language is clear and unambiguous, the statute must be applied as written, with no further judicial construction. *Ally Fin Inc v State Treasurer*, 502 Mich 484, 493; 918 NW2d 662 (2018).

MCL 123.1004 provides in relevant part:

The state members shall make rules and regulations and prescribe procedures necessary or desirable in carrying out the intent and purpose of this act, including forms of petitions for municipal boundary adjustments, and the documents, maps and supporting statements deemed to be necessary, establish rules for public hearings, for the submission of supplementary documents and statements, and governing the holding of elections where necessary.

* * *

The rules and regulations of the commission shall be promulgated in accordance with the provisions of the [APA].

The plain language of the MCL 123.1004 requires the Commission to make rules and regulations and prescribe procedures it finds necessary or desirable to enable it to carry out the intent and purpose of the SBCA. The Legislature's use of the term "shall" "indicates a mandatory and imperative directive." *Fradco, Inc v Dep't of Treasury*, 495 Mich 104, 114; 845 NW2d 81 (2014). Use of the term "shall" denotes a nondiscretionary command from it to the Commission. *Browder v Int'l Fidelity Ins Co*, 413 Mich 603, 612; 321 NW2d 668 (1982). The Legislature has directed the Commission in no uncertain terms to make a rule or regulation or prescribe a procedure,[8] when such a rule, regulation, or procedure is "necessary or desirable in carrying out

---

[8] The Legislature did not define "rule," "regulation," or "procedure" in the state boundary commission act. It did, however, make the Commission subject to the administrative procedures

the intent and purpose" of the act. MCL 123.1004. Our attention must turn, therefore, to what the terms "necessary" and "desirable" mean here.

Addressing the second term first, whether a rule, regulation, or procedure is "desirable" involves an inherent aspect of judgment by the body charged with carrying out the intent and purpose of the act. See *NL Ventures VI Farmington, LLC v City of Livonia*, 314 Mich App 222, 231-232; 886 NW2d 772 (2015). There might be an instance, for example, when a particular rule is not needed to implement the act fully, but, nevertheless, the rule might be viewed as a helpful one because it reduces an otherwise costly administrative burden on a resident or municipality. The Legislature cannot anticipate each and every instance where a particular rule, regulation, or procedure might be desirable in one sense or another, and therefore it has deferred this authority to the Commission.

Regarding the statute's directive to make rules, regulations, or procedures that are "necessary," the Legislature did not grant the Commission unfettered discretion. Admittedly, the term "necessary" can have different meanings, depending on the specific context. It can mean "requisite" or "indispensable"; alternatively, it can mean merely "appropriate" or "suitable." See, e.g., *City of Port Huron v Amoco Oil Co, Inc*, 229 Mich App 616, 626-630; 583 NW2d 215 (1998) (discussing the different meanings of the term and referencing *Black's Law Dictionary*); *Oxford English Dictionary* (defining "necessary" as "[i]ndispensible, vital, essential; requisite"). Thus, context is key.

There are several features of this statute that confirm a stricter reading of the term "necessary." First, the Legislature did not qualify this use of "necessary" with the term "reasonably" or another similar adjective. If it had, then this might have implied that the Legislature did, in fact, intend to grant greater discretionary judgment to the Commission. See *City of Port Huron*, 229 Mich App at 626-630. Second, just a few words after the "necessary" term at issue here, the Legislature did qualify another use of the term "necessary"—i.e., the Commission has the authority to promulgate a rule, regulation, or procedure respecting written records "*deemed* to be necessary." MCL 123.1004 (emphasis added). To deem something means to judge it; in this context, the Legislature expressly granted the Commission the authority to judge whether a particular type of record is necessary for the Commission to implement the act. See *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 181-182; 615 NW2d 702 (2000). The Legislature's use of the qualified "deemed to be necessary" phrase with respect to written records stands in stark contrast to the Legislature's use of the unqualified term "necessary" with respect to those rules, regulations, or procedures needed to carry out the intent and purpose of the act. Finally, the Legislature had already granted the Commission discretion to promulgate "desirable" rules, regulations, or procedures; had it meant for "necessary" to mean merely "appropriate" or "suitable," then there would have been no need to add the largely, if not wholly, redundant term

---

act of 1969, MCL 24.201 *et seq*. (APA). MCL 123.1004. The APA explains what a "rule" and a "regulation" are, see MCL 24.207, and while the APA does not similarly explain what a "procedure" is, the context of MCL 123.1004 seems clear that a "procedure" is akin to a "rule" under the APA. This is not a critical issue here, however, so further analysis of the matter is not warranted.

"or desirable." While belts-and-suspenders are not unknown to the Legislature, courts generally presume that the Legislature does not embrace redundancies.

Under MCL 123.1004, the Commission has discretion to promulgate a particular rule, regulation, or procedure that it judges desirable. But, where the absence of a particular rule, regulation, or procedure undermines the Legislature's very intent and purpose for enacting the law, the Commission has no discretion—that rule, regulation, or procedure is necessary and must be promulgated. Put another, way, if something vital or indispensable is missing from a regulatory scheme, then this logically implies that the regulatory scheme is deficient in some core, fundamental way. With its use of the terms "shall" and "necessary," the Legislature has commanded the Commission to promulgate a regulatory scheme that carries out the act's intent and purpose.

Accordingly, we conclude that the Legislature did not intend to grant discretion to the Commission respecting whether the latter must promulgate rules, regulations, or procedures when they are necessary. In the context of MCL 123.1004, the Legislature made clear that the Commission has no discretion to promulgating necessary rules, regulations, or procedures, and whether it violated this duty is a question of law over which this Court likewise grants the Commission no discretion. *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 88; 832 NW2d 288 (2013).

This case called upon the Court of Claims to interpret MCL 123.1004. We hold that it appropriately discerned the Legislature's intent as expressed in the plain language of the statute. Plaintiffs argue that this Court should peremptorily reverse the Court of Claims' summary disposition decision and enjoin the Commission from processing any annexation petition until the Commission promulgates rules because it operates under informational guidelines plaintiffs contend result in arbitrary sham proceedings "that allows an administrative agency to basically change or dictate the process as it proceeds." We disagree.

The APA "applies to all agencies and agency proceedings not expressly exempted." MCL 24.313. An "Agency" is defined as a "state department, bureau, division, section, board, commission, trustee, authority or officer, created by the constitution, statute, or agency action." MCL 24.203(2). There is no dispute that the Commission is a state agency. The APA defines a "rule" to include "an agency regulation, statement, standard, policy, ruling, or instruction of general applicability that implements or applies law enforced or administered by the agency, or that prescribes the organization, procedure, or practice of the agency . . . ." MCL 24.207. A "rule" does not include a "guideline" "that in itself does not have the force and effect of law but is merely explanatory." MCL 24.207(h). The APA defines the term "guideline" as "an agency statement or declaration of policy that the agency intends to follow, that does not have the force or effect of law, and that binds the agency but does not bind any other person." MCL 24.203(7). The APA prescribes how agencies adopt guidelines. MCL 24.224, MCL 24.225. The APA specifies that "[a]n agency shall not adopt a guideline in lieu of a rule." MCL 24.226.

Analysis of the "informational guidelines" submitted to the Court of Claims and to this Court that are posted on the Internet by the Commission indicates that they describe the process the Commission follows related to annexation petitions and provide information explaining the extensive statutory requirements set forth in the SBCA with citations to the applicable statutory

provisions. The Internet postings provide clarity to petitioners and other interested parties how the statutorily outlined process takes place before the SBCA and how the Commission performs its work as required under the SBCA. The Commission's "informational guidelines" are not a declaration of policy nor do they have the force and effect of law. They appear to be a reasonable and understandable summary of the requirements set forth in the SBCA and outline the process required by statute. These nonbinding "informational guidelines" cannot reasonably be characterized as arbitrary because they are obviously grounded in the SBCA and indicate the Commission's intent to adhere to the statutorily specified requirements and procedures. Further, because they are grounded in the SBCA and do not suggest or permit deviation from the SBCA, the Commission cannot be accused of rendering its decisions in arbitrary sham proceedings. Moreover, the Commission's Internet items nowhere indicate that they serve as guidelines in lieu of rules. Rather, they plainly indicate that they serve as guidance for persons to understand the process of annexation and how to carry out that process efficiently and correctly without confusion.

Because of the detailed statutory process set forth in the SBCA, we conclude there was no need for promulgated rules, regulations, or procedures respecting the legal sufficiency meeting. The Legislature set forth a detailed, comprehensive scheme for resolving boundary petitions, including setting forth requirements for the legal sufficiency meeting. See, e.g., MCL 123.1008(2); MCL 78.4(1). The Commission has helpfully put the various requirements into readily understandable guidelines, but these do not add to or contradict the requirements that are already found in statute. The guidelines are not, in other words, unpromulgated rules-in-disguise in violation of the APA, MCL 24.226. And, at least with respect to the legal sufficiency meeting, there do not appear to be any rules, regulations, or procedures that are necessary but missing. Accordingly, we find no merit to plaintiffs' arguments in this regard.

Plaintiffs also argue that the Court of Claims erred by ruling that they were not entitled to injunctive relief because they failed to establish that they suffered prejudice by the Commission's processing of Annex Petition 20-18-01 without any promulgated rules. We disagree.

In *Davis v City of Detroit Fin Rev Team*, 296 Mich App 568, 613-614; 821 NW2d 896 (2012), this Court summarized the applicable principles and the analysis required when considering a claim for injunctive relief:

> As this Court has recognized, an injunction represents an extraordinary and drastic use of judicial power that should be employed sparingly and only with full conviction of its urgent necessity. This Court has identified four factors to consider in determining whether to grant a preliminary injunction:

> > (1) the likelihood that the party seeking the injunction will prevail on the merits, (2) the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, (3) the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief, and (4) the harm to the public interest if the injunction is issued.

-12-

Stated another way, injunctive relief is an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury. [Quotation marks, alteration, and citations omitted.]

In this case, because the Commission did not violate the SBCA by not promulgating rules or regulations, plaintiffs cannot prevail on the merits of their claim. Further, under the circumstances presented in this case, plaintiffs have not and cannot establish irreparable harm. Because plaintiffs cannot establish the first two factors to support their claim for injunctive relief, their claim fails as a matter of law.

In its opinion and order granting defendant summary disposition, the Court of Claims noted that plaintiffs provided no argument regarding whether the court could compel the Commission to adopt and promulgate rules for carrying out its statutory duties. In this Court, the Commission likewise contends that plaintiffs have not cited any binding caselaw supporting the proposition that this Court can require the Commission to promulgate rules under MCL 123.1004. Plaintiffs contend that there is no remedy to address the prejudice caused by the Commission's failure to promulgate rules other than injunctive relief. Plaintiffs, however, cannot establish that the Commission has a statutory obligation to promulgate rules that are neither necessary nor desirable. Both the SBCA and the APA provide for judicial review of a final agency decision. MCL 123.1018; MCL 24.301 *et seq.*

An early nonbinding case decided by this Court, *Mich State Chamber of Commerce v Secretary of State*, 122 Mich App 611, 614-615; 332 NW2d 547 (1983), is instructive.[9] In it, this Court addressed an agency's failure to promulgate rules before undertaking its statutory duties under the Campaign Finance Act, MCL 169.201 *et seq*. Unlike this case, the Secretary of State had a nondiscretionary duty to promulgate rules implementing the act in accordance with the APA under MCL 169.215(1)(e). Instead of promulgating rules in accordance with the APA, the Secretary of State published a document entitled "Guidelines for Corporate Separate Segregated Funds." Although the Secretary of State did not promulgate the document as rules or guidelines under the APA, the Secretary of State announced the intention to enforce the act in conformity with the document. *State Chamber of Commerce*, 122 Mich App at 614-615. Following that announcement, the plaintiffs filed an action in circuit court seeking declaratory and injunctive relief to prevent enforcement of the act pursuant to the published document. On appeal, a panel of this Court ruled that the circuit court lacked jurisdiction over the plaintiffs' suit, explaining that "[t]he absence of any rules, guidelines, or declaratory rulings binding on the parties prevents the judiciary from exercising jurisdiction over this cause. No legislative provision allows for an action against the state for the purpose of contesting the merits of an agency's nonbinding interpretation of a statute." *Id*. at 617-618.

In *West Bloomfield Hosp v Certificate of Need Bd*, 452 Mich 515; 550 NW2d 223 (1996), our Supreme Court addressed an agency's failure to promulgate a state medical facilities plan

---

[9] Cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), but they may be considered as persuasive authority. *Aroma Wines & Equip, Inc v Columbian Dist Servs, Inc*, 303 Mich App 441, 453 n 4; 844 NW2d 727 (2013).

before undertaking its statutory duties. In that case, with the enactment of 1972 PA 256, the Legislature created a system whereby a permit to build a new hospital facility or modify an existing one could only be granted upon a showing of need within the community, consistent with a state medical facilities plan. *Id*. at 521-522. In 1983, after the Department of Public Health denied permits to several applicants, the applicants appealed to the circuit court which affirmed the denial. This Court reversed the circuit court, finding that the failure of the Department of Public Health to adopt a medical facilities plan denied the department the authority to grant or deny the applications and concluded that granting of the applications served as the appropriate remedy. *Id.* at 517-522. Our Supreme Court reversed this Court, explaining that "[w]hen an agency fails to adopt rules requisite to the processing of an application, and nevertheless conducts a hearing and grants or denies the application, it does not necessarily follow that the agency's decision is automatically invalid or subject to reversal." *Id.* at 524. Instead, a reviewing court "may excuse a procedural deficiency if the rule in question merely assists the agency in the exercise of its discretion and there is no substantial prejudice to the complaining party." *Id.*

In this case, the Court of Claims noted that plaintiffs' complaint requested only injunctive relief and, citing *Midland I*, 64 Mich App 700, and *In re Turner*, 108 Mich App 583, observed that "[c]aselaw has held that, in situations where a litigant seeks to question or invalidate agency action based on the agency's failure to promulgate rules, the litigant must demonstrate prejudice from the lack of rules." In *Midland I*, the plaintiffs appealed to the circuit court from decisions granting two petitions for annexation, one filed in 1968, before amendment of the SBCA by 1970 PA 219 that granted the defendant jurisdiction over annexation proceedings, and one filed in 1971. The plaintiffs contended that 1970 PA 219, which established the Commission's jurisdiction over annexations proceedings, was unconstitutional, and they also challenged the Commission's failure to promulgate any rules under the SBCA. The circuit court granted summary disposition in favor of the plaintiffs, concluding that 1970 PA 219 violated Const 1963, art IV, §§ 24, 25, constitutional provisions which require that laws enacted, revised, altered, or amended may not embrace more than one object which must be expressed in the law's title. *Midland I*, 64 Mich App at 705, 713-714. Although the circuit court considered the failure to promulgate rules "unfathomable," it found that the plaintiffs had failed to show "how such a failure on the part of the State Boundary Commission has in any way prejudiced them in their presentation of their opposition to said annexation or how such failure adversely affects the decision made by the Boundary Commission." *Id.* at 712. Affirming the circuit court's decision, this Court stated that "it would have been much better if the SBC had adopted rules and published them. In the absence of a showing of prejudice by plaintiffs, we agree with the trial court in its reasoning and ruling on this issue." *Id.* at 721-722.

In *In re Turner*, 108 Mich App at 585-587 the petitioner appealed a decision of an administrative law judge (ALJ) requiring reimbursement for mental health services provided to her husband, first to the probate court and then to circuit court, both of which affirmed the decision. On appeal to this Court by leave granted, the petitioner asserted that she had been denied due process because the agency had not promulgated rules for determining responsibility for reimbursement. *Id*. at 588-589. This Court found that the proceedings were conducted pursuant to the contested case provisions of the APA and "afforded the petitioner all the procedural safeguards of due process." *Id.* at 589. This Court affirmed the lower court, citing *Midland I* and held that the petitioner had failed to show how the absence of rules adversely affected the decision of the ALJ. *Id.* at 590.

-14-

The Court of Claims in this case cited two additional decisions of this Court in support of its conclusion that plaintiffs must show prejudice from defendant's failure to promulgate rules. In *Vernon v Controlled Temperature, Inc*, 229 Mich App 31, 35; 580 NW2d 452 (1998), the plaintiff appealed a decision of the Worker's Compensation Appellate Commission directing him to authorize his employer to obtain information from the Social Security Administration pursuant to MCL 418.354(3)(a), which also provided that the Bureau of Worker's Compensation "shall promulgate rules to provide for notification by an employer or carrier to an employee of possible eligibility for social security benefits and the requirements for establishing proof of application for those benefits." This Court rejected the plaintiff's contention that the bureau's failure to promulgate those rules relieved him of the obligation to authorize release of the information, holding that "[t]he purpose of the unpromulgated rules was satisfied in the present case when plaintiff repeatedly received notice from his employer." *Id*. at 39.

In *Acrey v Dep't of Corrections*, 152 Mich App 554, 556; 394 NW2d 415 (1986), the petitioner appealed to the circuit court from a decision of the Department of Corrections finding him guilty of major misconduct. The circuit court reversed the department's decision; however, on further appeal, this Court disagreed, and reversed the circuit court. *Id*. This Court rejected the petitioner's argument that MCL 791.254(4) required the department to promulgate rules and the department's failure to do so rendered void all hearings held by the department including his misconduct hearing. This Court explained that the hearings division act required "only that the department promulgate rules 'necessary to implement this chapter'." *Id*. at 560. This Court ruled that the hearings held should not be "declared void on the mere possibility that a necessary rule may not have been implemented." *Id*. "Since petitioner has failed to present facts establishing that a procedure was followed that necessarily had to be implemented by rule, we decline to declare void the decision of the department on this basis." *Id.* at 560-561.

The cases cited and relied upon by the Court of Claims indicate that, not only must a litigant seeking injunctive relief establish that an agency has a statutory obligation to promulgate rules, but the litigant must also demonstrate that the failure to do so caused the litigant prejudice by denying the litigant notice and opportunity to present its position before a final decision has been made. Plaintiffs attempt to distinguish these decisions on the ground that, unlike this case, each of the decisions cited by the Court of Claims involved a challenge to a final decision of an administrative agency. However, as the Court of Claims observed, plaintiffs only sought injunctive relief in their complaint and are therefore required to demonstrate prejudice or irreparable harm in any event.

Injunctive relief is an extraordinary remedy. *Pontiac Fire Fighters Union Local 376 v City of Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008). A party seeking a preliminary injunction must make "a particularized showing of irreparable harm." *Mich Coalition of State Employee Unions v Mich Civil Serv Comm*, 465 Mich 212, 225; 634 NW2d 692 (2001). A preliminary injunction may not be issued "upon the mere apprehension of future injury or where the threatened injury is speculative or conjectural." *Mich AFSCME Council 25 v Woodhaven-Brownstown Sch Dist*, 293 Mich App 143, 149; 809 NW2d 444 (2011), quoting *Dunlap v City of Southfield*, 54 Mich App 398, 403; 221 NW2d 237 (1974). A permanent injunction will issue "only when justice requires, there is no adequate remedy at law, and there is a real and imminent danger of irreparable injury." *Janet Travis, Inc*, 306 Mich App at 274.

In this case, the Court of Claims correctly ruled that plaintiffs failed to demonstrate that they were prejudiced by the Commission's not having promulgated rules. Plaintiffs admit that Michigan caselaw provides no examples of plaintiffs being prejudiced by the lack of administrative rules. Nevertheless, plaintiffs assert that they have been prejudiced because they claim that there is no binding process or procedure controlling the conduct of hearings, the submission of evidence, how or when to address the commissioners at hearings, or how to raise defenses. Plaintiffs further argue that there are no binding rules outlining the responsibilities of the commissioners, the review of evidence, or whether the Attorney General reviews annexation petitions. Plaintiffs conclude, with no further explanation, that "this is prejudice." As a final example of prejudice, plaintiffs describe a meeting that occurred on September 24, 2020, during which plaintiffs "suspected" that a previous meeting had been held between the Commission and the petitioners.

Analysis of plaintiffs' examples of prejudice reveal that they are speculative based upon conjectural apprehension of future injury. The Court of Claims properly rejected plaintiffs' contention that they were denied the opportunity to be heard at the June 4 meeting, correctly noting that the minutes of that meeting established that plaintiffs' attorney attended the meeting and presented plaintiffs' argument that the parcels were not contiguous. The court also correctly ruled that plaintiffs failed to specify any additional rules or "how they would make a difference in this case." Moreover, the SBCA contains numerous statutory requirements that must be satisfied, including criteria to be considered. See MCL 123.1009. Further, the SBCA provides for judicial review of the Commission's final decisions, MCL 123.1018. Plaintiffs, therefore, cannot establish that they suffered prejudice by the Commission's decision to not promulgate rules. The record reflects that plaintiffs have not established any concrete irreparable harm or prejudice stemming from the lack of rules.

With respect to the guidelines that cover subsequent administrative proceedings (e.g., public hearing on the merits of the petition, recommendation meeting), we note that, as explained during the parties' oral argument before this Court, the administrative proceedings are ongoing and there has been no final administrative decision made to date. When a final decision is made, there will be an opportunity for judicial review, including whether plaintiffs were precluded from presenting their evidence to the Commission. MCL 123.1017. Because plaintiffs failed to establish prejudice from the absence of promulgated rules, the Court of Claims did not abuse its discretion by denying plaintiffs injunctive relief and it did not err by granting summary disposition in favor of the Commission.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kirsten Frank Kelly
/s/ James Robert Redford

-16-